UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LIBIA G. A.,<br>    *Plaintiff*,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of the Social Security<br>Administration,<br>    *Defendant*. | CASE NO. 3:22-cv-426 (KAD)<br><br><br><br><br>March 29, 2023 |

**MEMORANDUM OF DECISION**
**RE: PLAINTIFF'S MOTION TO REVERSE (ECF NO. 10) AND COMMISSIONER'S MOTION TO AFFIRM (ECF NO. 13)**

Kari A. Dooley, United States District Judge:

Plaintiff Libia G. A. ("Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Administration"), denying her application for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"). Plaintiff moves to reverse the Commissioner's decision insofar as the Administrative Law Judge ("ALJ") failed to rely on any medical opinion and instead independently constructed Plaintiff's residual functional capacity ("RFC"). Alternatively, she seeks a remand for further proceedings before the Commissioner. In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and thus should be affirmed. For the reasons set forth below, Plaintiff's Motion to Reverse (ECF No. 10) is DENIED and the Commissioner's Motion to Affirm (ECF No. 13) is GRANTED.

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). In addition, a claimant must establish that his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [hi] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . . " 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to which an ALJ must adhere when evaluating disability claims. *See* 20 C.F.R. 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if such a "severe impairment" is established, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity (hereinafter "RFC") to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof with respect to steps one through four. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The Commissioner bears the burden as to step five, that is, finding the

existence of work in the national economy that the claimant can perform. *See McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "[c]ourt shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). It is well-settled that the district court will reverse an ALJ's decision only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater,* 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The Court does not inquire as to whether the record might also support the Plaintiff's claims, but only whether there is substantial evidence to support the Commissioner's decision. *See Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld").

**Facts and Procedural History**

On August 9, 2018, Plaintiff applied for disability insurance benefits[1] pursuant to Title II of the Act,[2] alleging an onset date of April 16, 2018. Her claim was initially denied on November 1, 2018 and upon reconsideration on November 6, 2019. Thereafter, a hearing was held before an ALJ on November 18, 2020. On January 29, 2021, the ALJ issued a written decision denying

---

[1] The regulations for disability and disability insurance are found at 20 C.F.R. § 404.900, *et seq.*
[2] 42 U.S.C. § 401 *et seq.*

Plaintiff's application for benefits. Plaintiff submitted a request for further review on March 26, 2021, which the Appeals Council denied on February 3, 2022.

At Step One, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date, April 16, 2018. At Step Two, the ALJ determined that Plaintiff had severe impairments of peripheral neuropathy and obesity. At Step Three, however, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations.[3] At Step Four, the ALJ found that Plaintiff has the RFC to perform light work[4] subject to several limitations, to include that Plaintiff could not operate right foot controls; required the use of a cane or walker to ambulate; could occasionally bend, balance, twist, squat, kneel, crawl, or climb; could never climb ropes, scaffolding, or ladders; and should avoid dangerous machinery, heights, vibration, and driving. At Step Five, the ALJ determined that Plaintiff cannot perform her past relevant work as a hand packager, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as small product assembler, garment folder, and packager/inspector. Accordingly, the ALJ concluded that Plaintiff was not disabled under Sections 216(i) and 223(d) from April 16, 2018 to January 29, 2021. This timely appeal followed.

**Discussion**

*Substantial Evidence Supports the ALJ's RFC Determination*

Plaintiff argues that the ALJ erred in formulating her RFC because he failed to rely on any medical opinion and instead "constructed the RFC [of] whole cloth" and created an "evidentiary

---

[3] *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1 (listing qualifying impairments).
[4] Defined in 20 C.F.R. 404.1567(b) as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

4

gap." In response, the Commissioner argues that substantial evidence supports the ALJ's RFC assessment. The Court agrees with the Commissioner.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545; 416.945. In formulating an RFC, an ALJ uses "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); *see also Corbiere v. Berryhill*, 760 F. Appx. 54, 57 (2d Cir. 2019) ("[T]he ALJ must weigh all the evidence to make a[n RFC] finding consistent with the record as a whole."). But it is the plaintiff's burden to provide evidence to establish any work-related limitations. *See Smith v. Berryhill*, 740 F. Appx. 721, 726 (2d Cir. 2018).

Plaintiff primarily claims that the ALJ failed to adequately develop the record in making his RFC determination because he rejected all of the medical opinions and only found partially persuasive an opinion from Dr. Kogan who concluded he could not determine any work related limitations. But an ALJ is not required to exclusively rely on one medical opinion over another or rely on any one opinion verbatim. "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. Appx. 53, 56 (2d Cir. 2013). The record reveals that the ALJ carefully considered the diagnostic testing, treatment notes from Plaintiff's doctors and physical therapists, Dr. Kogan's findings, and the opinions of the state medical consultants in rendering his decision. As the ALJ correctly observed, "[d]espite the claimant's complaints, the claimant is treated conservatively and *no treating or examining physician has imposed restrictions that would preclude work activity.*" Tr. 28 (emphasis added). Plaintiff does not argue to the contrary. The ALJ then examined the record as a whole to determine what that work activity could include.

Although Dr. Kogan did not include specific work related limitations, Plaintiff fails to acknowledge (or discuss in any fashion) that Dr. Kogan was unable to determine those limitations because of a discrepancy between the level of functioning he observed during the formal examination and a much greater level of functioning he observed outside the formal examination. *See* Tr. 995. During the formal examination, Plaintiff displayed no tenderness or swelling and a full range of motion in the cervical spine, lumbar spine, or upper and lower extremities; Plaintiff had intact sensation and full strength and coordination in the extremities except for the right leg; Plaintiff ambulated independently on a narrow base with a moderately reduced step length, speed, and stride; Plaintiff ambulated with only mildly reduced step length, speed, and stride when using her cane; and *Plaintiff provided no active movement at the right hip, right knee, and right ankle, reporting pain and weakness with any attempt at movement*. Tr. 994–95. However, outside the formal examination, Dr. Kogan observed Plaintiff *flexing her right knee to 90 degrees while sitting and fully extending it while standing, and further observed that Plaintiff was able to get onto the examination table, recline fully, and get off the table with some assistance, indicating that she "achiev[ed] [a] range of motion and function at the [right] hip and [right] knee significantly beyond that provided on the formal exam." Id.* In light of these observations, the ALJ found Dr. Kogan's opinion partially persuasive because the more robust functioning outside of the formal examination was consistent with other treatment notes that showed that Plaintiff's symptoms improved with conservative treatment.[5] Tr. 29–30.

The ALJ also found the state medical consultant opinions not persuasive because they did not have access to subsequent treatment records that showed an improvement in Plaintiff's

---

[5] It would be an odd result indeed if Plaintiff could create this so-called "evidentiary gap" by limiting her effort during the examination to the point that Dr. Kogan could not offer reliable opinions regarding work limitations.

6

symptoms and functioning. Tr. 29.[6] It is worth observing however that both consultants opined that Plaintiff was *not* disabled, but both would have restricted her to sedentary work. The improvement reflected in subsequent treatment records undermined this aspect of the opinions. However, consistent with these opinions, the ALJ limited the Plaintiff to only "occasional" bending, balancing, kneeling, squatting/crouching, and crawling.[7] Tr. 68, 83. So although the ALJ found the opinions "unpersuasive," he nevertheless incorporated much of them into the RFC. Accordingly, the Court rejects the assertion that the ALJ's consideration of the medical opinions created an evidentiary gap.

Plaintiff also claims that the ALJ mischaracterized Plaintiff's improvement in symptoms in reaching his RFC finding, and therefore, the conclusion is unsupported by substantial evidence. This argument merely offers an alternative view of the record. But "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). And it is not the role of the Court to review the record *de novo*. *See generally Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Assessing the evidence on which the ALJ relied, the Court concludes that the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion to Reverse (ECF No. 10) is DENIED and the Commissioner's Motion to Affirm (ECF No. 13) is GRANTED. The Clerk of the Court is directed to enter judgment in favor of the Commissioner and close the file.

---

[6] Notably, the RFC in at least one respect is more restrictive than was recommended because it accounts for Plaintiff's need to use a cane or walker to ambulate.
[7] Dr. Wurzel only limited the Plaintiff to "frequent" balancing, thereby rendering the RFC more restrictive in this regard as well. However, Dr. Wurzel opined that Plaintiff should never crawl.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of March 2023.

                                           */s/ Kari A. Dooley*
                                           KARI A. DOOLEY
                                           UNITED STATES DISTRICT JUDGE